United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PROTÉGÉ RESTAURANT PARTNERS LLC, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SENTINEL INSURANCE COMPANY, LIMITED, d/b/a THE HARTFORD<br><br>Defendant. | Case No.  20-cv-03674-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Re: ECF 42] |

This case arises from a dispute over the application of a "business interruption" insurance policy to measures taken in response to recent public health orders that required businesses to operate at a limited capacity. Plaintiff Protégé Restaurant Partners, LLC ("Plaintiff" or "Protégé"), individually and on behalf of all other similarly situated entities (collectively, the "Class"), brings this class action against defendant Sentinel Insurance Co., Ltd. d/b/a The Hartford ("Defendant" or "Sentinel") for Defendant's refusal to pay COVID-19 related claims based on the insurance policy it sold to Plaintiff and the Class. Plaintiff asserts claims for a declaratory judgment and for breach of contract based on Business Income coverage (Counts I, II), Civil Authority coverage (Counts III, IV), Extra Expense coverage (Counts V, VI), Sue and Labor coverage (Counts VII, VIII), Virus Endorsement coverage (Counts IX, X), and Breach of Implied Covenant of Good Faith and Fair Dealing (Counts XI, XII). *See* First Am. Compl. ("FAC"), ECF 26. Defendant brings this Motion to Dismiss for failure to state a claim, lack of subject matter jurisdiction, and lack of

personal jurisdiction. *See* Mot. to Dismiss First Am. Compl. ("Mot."), ECF 42. The Court determines that the motion is appropriate for disposition without oral argument and, thus, is deemed submitted. *See* Civ. L.R. 7-1(b). Accordingly, the hearing set for February 28, 2021 is VACATED. Having considered the parties' briefing, the Court GRANTS this Motion WITH LEAVE TO AMEND.

**I.   BACKGROUND**

**A. Factual Allegations**

Plaintiff Protégé owns and operates a New American Cuisine restaurant in Palo Alto, California. *See* FAC ¶ 3. Plaintiff purchased a "business interruption" insurance policy ("the Policy") from Defendant "to protect itself against unexpected risks." *See id.* ¶ 50. The Policy was in effect from January 2020 through January 2021. *See id.* The Policy covers interruption of business caused by an order from a civil authority ("Civil Authority" coverage), business income losses sustained due to the necessary suspension of operations ("Business Income" coverage), and expenses incurred to minimize the suspension of business ("Extra Expense" coverage), subject to limitations, including a "Virus Exclusion." *See id*. ¶¶ 5, 16. Under certain conditions, the Policy provides that the policyholder can be reimbursed for expenses incurred while "[taking] all reasonable steps to protect the Covered property from further damage" ("Sue and Labor" coverage). *Id.* ¶ 17.

In March 2020, the World Health Organization declared COVID-19 a global health pandemic, and the CDC issued guidance restricting gatherings of individuals in an attempt to stop the spread of the virus through surface transmission and through the air. *See id.* ¶¶ 42, 44.

On March 17, 2020, Santa Clara County issued a county-wide stay-at-home order to mitigate the spread of COVID-19, on the basis of a confirmed outbreak in the area. *See id.* ¶ 45. On March 19, 2020, Governor Gavin Newsom issued an Executive Order and Public Health Order that directed Californians to stay at home, and close businesses not deemed "essential." *See id.* ¶

46. Collectively, these orders are referred to as the "Closure Orders." Although Plaintiff, whose restaurant was categorized as an "essential business," was only required to stop in-person dining and could continue to operate its kitchen to prepare take-out orders, Plaintiff chose to completely shut down its operations. *See id.* ¶ 49.

On or about March 30, 2020, Plaintiff made a claim under the Policy, seeking coverage caused by COVID-19 and the Closure Orders. *See id.* ¶ 18. In response, Defendant requested additional information from Plaintiff, and subsequently denied coverage. *See id.*

**B. Procedural History**

Plaintiff commenced this action on June 2, 2020. *See* Complaint ("Compl."), ECF 1. Plaintiff filed an amended complaint on September 8, 2020. *See* First Am. Compl. ("FAC"), ECF 27. On September 22, 2020, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim. *See* Mot. to Dismiss for Failure to State a Claim, ECF 33. Defendant concurrently filed a Motion to Dismiss for Lack of Jurisdiction. *See* Mot. to Dismiss for Lack of Jurisdiction, ECF 35. Defendant filed a combined Motion to Dismiss in conformity with Local Rules on October 5, 2020. *See* Mot. to Dismiss ("Mot."), ECF 42. Plaintiff filed its Opposition on October 19, 2020. *See* Opp'n. to Mot. to Dismiss ("Opp'n."), ECF 47. Defendant filed its Reply on November 2, 2020. *See* Reply to Opp'n. ("Reply"), ECF 54.

**II.    LEGAL STANDARD**

**A. Federal Rule of Civil Procedure 12(b)(6): Failure to State A Claim**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the

nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). While a complaint typically need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. Federal Rule of Civil Procedure 15(a): Leave to Amend

Under Federal Rule of Civil Procedure 15(a), the Court should freely grant leave to amend "when justice so requires," keeping in mind Rule 15's underlying purpose "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). A court has discretion, however, to deny leave to amend where amendment is futile. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### III. DISCUSSION[1]

---

[1] Both Plaintiff and Defendant request judicial notice of several public documents, including recent

4

Citing to recent cases in this Circuit that have interpreted nearly identical provisions, Defendant argues that the Virus Exclusion and the plain language of the Policy do not trigger coverage under any of the alleged provisions. *See* Mot. 13. Accordingly, because all of Plaintiff's claims are premised on the Policy covering its losses, Defendant contends that all of the claims must fail. *See id*. Plaintiff replies in opposition that the Virus Exclusion does not apply, and that the Policy's plain language provides coverage for all of Plaintiff's claims. *See* Opp'n. 9-11.

In California, the interpretation of an insurance policy is a question of law for the court to decide. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). "Insurance policies are contracts, and the ordinary rules of contract interpretation apply." *McMillin Homes Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 35 Cal. App. 5th 1042, 1050 (Cal. Ct. App. 2019). In interpreting an insurance policy, the Court first examines the contract language to determine its plain or ordinary meaning. *Waller*, 11 Cal. 4th at 18 (citation omitted). A policy is ambiguous if it is "capable of two or more constructions, both of which are reasonable." *Id.* Where a policy is ambiguous, it must be interpreted "to protect the objectively reasonable expectations of the insured." *Minkler v. Safeco Inc.*, 49 Cal. 4th 315, 321 (2010). Courts should not, however, "strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19. If the insured shows that a claim falls within the policy terms, the burden shifts to the insurer to demonstrate that an exclusion applies. *Id.* at 16.

**A. Business Income and Extra Expense Provisions**

Plaintiff alleges in its First and Second Claims that it is entitled under the Policy's

---

district court rulings addressing similar insurance claims and policies, as well as transcripts of hearings. *See* Request for Notice re Mot., ECF 43; Request for Notice re Opp'n., ECF 55. Courts may take judicial notice of matters either that are "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Specifically, "[the Court] may take judicial notice of undisputed matters of public record, . . . including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). Here, the documents for which Plaintiff and Defendant request judicial notice are matters of public record, which are on file in the state and federal courts. *See* Exhibits 1-3, ECF 43; Exhibits 4-8, ECF 55. And their factual contents are not disputed. *See generally* Mot.; Opp'n. Thus, the Court grants both Plaintiff's and Defendant's request.

"Business Income" coverage to income lost through the suspension of Plaintiff's business operations due to the Closure Orders. *See* Compl. ¶ 63. Plaintiff further alleges in its Fifth and Sixth Claims that it is entitled under "Extra Expense" coverage to expenses Plaintiff incurred to break-down and clean its property. *See id.* ¶ 64. Defendant moves to dismiss these claims on the ground that the Virus Exclusion bars coverage for COVID-19 business income losses, and in the alternative that Plaintiff failed to allege any "direct physical loss of or physical damage to" its property. *See* Mot. 12.

The Court agrees with Defendant that Plaintiff has failed to allege physical loss of or damage to its property and accordingly does not need to address the scope of the Virus Exclusion here. The Policy provides in relevant part:

> o. Business Income
>
> (1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.
>
> . . .
>
> q. Extra Expense
>
> (1) We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

ECF 1-1 at 40. In short, the "Business Income" and "Extra Expense" provisions apply only when (1) there is "*direct physical loss of or physical damage to* property at the 'scheduled premises' . . . caused by or resulting from a Covered Cause of Loss" and (2) *but for the physical loss or damage*, suspension in operation or additional expense would not have occurred. *See id*. (emphasis added).

6

The Policy's "direct physical loss of or physical damage to" language is unambiguous. California courts have interpreted "direct physical loss" to require a "distinct, demonstrable, physical alteration of the property" or a "physical change in the condition of the property." *See MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 771, 779-80, 115 Cal.Rptr.3d 27 (2010) (internal quotations and citations omitted). Accordingly, "a detrimental economic impact," such as limited use of property, "unaccompanied by a distinct, demonstrable, physical alteration of the property," is insufficient to claim a "direct physical loss." *See MRI*, 187 Cal. App. 4th at 779, 115 Cal.Rptr.3d 27. Where a policy additionally requires "direct physical loss of or physical damage to property," there must either be a physical change in the condition or a permanent dispossession of the property. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) (finding that a more expansive interpretation of 'direct physical loss of property' to include dispossession of property would require a 'permanent dispossession.'").

Every California court that has addressed COVID-19 business interruption claims to date has concluded that government orders that prevent full use of a commercial property or that make the business less profitable do not themselves cause or constitute "direct physical loss of or physical damage to" the insured property. *See*, *e.g., 10E, LLC v. Travelers Indem. Co. of Connecticut*, 2020 WL 5359653, at *4-5 (C.D. Cal. Sept. 2, 2020) ("An insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage."); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *4-5 (S.D. Cal. Sept. 11, 2020) ("*Pappy's I*") ("Most courts have rejected these claims, finding that the government orders did not constitute direct physical loss or damage to property."); *Mudpie, Inc*, 2020 WL 5525171, at *4 ("Moreover, while a 'direct physical loss of' property does not require damage or physical alteration to the property, the surrounding provisions within Travelers's insurance policy suggest that Mudpie's inability to

7

occupy its storefront does not fall within the Business Income and Extra Expense coverage of this policy."). A court in this district interpreting identical provisions found that "direct physical loss of property does not include the temporary loss of use due to the governmental Stay-at-Home orders," noting that plaintiff "did not allege that it lost access to the properties, but merely that it was not allowed to operate its business out of the properties." *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, No. 20-CV-04783-SK, 2021 WL 141180, at *4 (N.D. Cal. Jan. 13, 2021). In light of this abundance of caselaw, the Court finds as a matter of law that the Policy is unambiguous. *See Waller*, 11 Cal. 4th at 18.

Plaintiff does not adequately plead that it suffered a loss under the unambiguous "direct physical loss of or damage to" language of the Policy. *See generally,* FAC. Plaintiff's claim that the Closure Orders prohibited customers' access to its property is not sufficient to show permanent disposition. *See id.* ¶¶ 12, 13. Plaintiff was never disposed of its property, as it was the customers, and not Plaintiff, who were prohibited from access. *See id.* ¶ 13. Additionally, Plaintiff never claimed that the Closure Orders were permanent. *See generally, id.; see also Mudpie, Inc.*, 2020 WL 5525171, at *4 (finding that a more expansive interpretation of 'direct physical loss of property' to include dispossession of property would require a 'permanent dispossession.'"). Further, Plaintiff's claim that there was a high risk that COVID-19 particles were present on its property does not constitute physical damage. *See id.* ¶ 12. Even if Plaintiff had known of a specific instance of COVID-19 particles inside of its business, evidence of such would still not qualify as a "physical change" to the property. *See Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 2:20-CV-00401, 2020 WL 6436948, at *5 (S.D.W. Va. Nov. 2, 2020) ("no coverage because "COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant."). Under these pleadings, there is no Policy coverage.

Plaintiff submitted two recent out-of-circuit decisions which held that "physical loss of"

property does not unambiguously require that dispossession be permanent. *See* ECF 64-1, 2.[2] Neither of these cases is persuasive to this Court as both rely on their respective state laws and non-binding district court decisions to find ambiguity. *See Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-CV-265, 2020 WL 7249624, at *8 (E.D. Va. Dec. 9, 2020) ("The Court finds that the phrase 'direct physical loss' has been subject to a spectrum of interpretations in Virginia"); *Henderson Rd. Rest. Sys., Inc. v. Zurich Am. INS. Co.*, No. 1:20 CV 1239, 2021 WL 168422, at *12 (N.D. Ohio Jan. 19, 2021) ("Zurich has not cited any Ohio law constraining this Court to its interpretation of the Policy. And because there is more than one interpretation, the Policy must be construed liberally in Plaintiffs' favor."). Courts in California and in this district have specifically interpreted "physical loss of," when used in the phrase "physical loss of or damage to," to unambiguously require permanent dispossession. *See Mudpie.*, 2020 WL 5525171, at *4.

Plaintiff also relies on *Studio 417, Inc. v. Cincinnati Ins. Co.*, 2020 WL 4692385, at *6 (W.D. Mo. Aug. 12, 2020) to support the proposition that the presence of COVID-19 particles can constitute direct physical loss. *See* Opp'n. 27. In *Studio 417*, the court held that plaintiffs adequately alleged a direct physical loss when they stated that "COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable." *Id.* Plaintiff claims that it similarly alleges that it closed due to physical damage caused by COVID-19 to its property. *See* Opp'n. 27. However, Plaintiff does not actually claim any confirmed cases of COVID-19 were present on its property. *See* FAC ¶19. Rather, Plaintiff notes the growing number of cases in Santa Clara County and extrapolates that its property was likely infected, but not that it actually was. *See id; see also Mudpie*, 2020 WL 5525171, at *6 (distinguishing *Studio 417* because plaintiff did not

---

[2] Defendant has submitted dozens of recent decisions, which the Court does not address except to note that those cases are in accord with all of the authorities cited in Defendant's briefs.

allege "the presence of the COVID-19 virus in its store created a physical loss."); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-CV-00087-KS-MTP, 2020 WL 6503405, at *7 n. 12 (S.D. Miss. Nov. 4, 2020) (distinguishing *Studio 417* because plaintiff did not allege that the virus was present on the restaurant premises, but instead that it was forced to close its premises as a direct result of the governmental orders).

Even if Plaintiff could prove that the virus was present on and physically damaging its property, Plaintiff has not claimed that this physical damage is what caused it to suspend operations or incur extra expense, as is required under the plain language of the Policy. *See generally,* FAC. Under the facts pled by Plaintiff, there is no coverage. Plaintiff admits that it suspended operations due to the Closure Orders, noting that it shut down "when the Closure Orders and government officials announced that COVID-19 posed a risk of causing further physical property damage and loss." *See* FAC ¶¶ 49, 58. Plaintiff does not allege that it shut down its operations or incurred expenses due to any "physical damage," or the potential presence of COVID-19 on its property, as Plaintiff took these actions fully unaware of whether the virus had spread into its restaurant. *See generally,* FAC. Accordingly, Plaintiff's argument that it could uncover "relevant extrinsic evidence that COVID-19 causes physical damage to property" would not save Plaintiff's claims as Plaintiff's allegations indicate that it would have taken the same actions due to the Closure Orders regardless of whether COVID-19 particles were present on its property. *See Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020) ("*Pappy's II*") (holding that even assuming presence of virus at plaintiffs' business premises, business income losses were caused by precautionary measures taken by the state to prevent the spread of COVID-19 rather than by direct physical loss of or damage to property); *Uncork & Create LLC*, 2020 WL 6436948, at *5 (no coverage because "COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant.").

### B. Civil Authority Provision

Plaintiff alleges that it is entitled to business income losses in its Third and Fourth Claims under "Civil Authority" coverage because the "Closure Orders directly resulted from the risk of direct physical loss caused by COVID-19 and have caused Plaintiff to lose use of its premises for their intended purpose." FAC ¶ 62. Defendant argues that Plaintiff's claim is deficient because "'access' to its insured premises was not 'specifically prohibited.'" Mot. 26. The Court finds that the language of the Civil Authority provision is unambiguous as a matter of law and requires that Plaintiff show both that 1) Plaintiff's access to its premises was prohibited and 2) that the Closure Orders were issued in response to a risk of direct physical loss. *See Waller*, 11 Cal. 4th at 18. Plaintiff's allegations fail to adequately show either. The Policy provides:

> q. Civil Authority
>
> (1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises."

ECF 1-1 at 41. The Policy's Civil Authority provision covers "actual loss of Business Income" for up to 30 days "when access to [the insured's] 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [its] 'scheduled premises.'" *Id.* The Policy defines Covered Causes of Loss as risks of direct physical loss which are not excluded or limited. *See id.* at 32.

Plaintiff has failed to adequately allege that access to its restaurant was "prohibited." *See generally,* FAC. Plaintiff relies on two orders for its Civil Authority claims – the Santa Clara County Order and Governor Newsom's Executive Order. *See* FAC ¶¶ 45, 46. Both Closure Orders allowed "essential businesses," which restaurants are considered, to remain open. *See* Mar. 16, 2020 Order of the Health Officer of Santa Clara County at 5 (¶ 10.f.xiii), available at https://www.sccgov.org/sites/covid19/Documents/03-16-20-Health-Officer-Order-to-Shelter-in-

Place.pdf ("Santa Clara County Order") (cited at FAC ¶ 45 & n.14); Exec. Order N-33-20 (Mar. 19, 2020), available at https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf (cited at FAC ¶ 46 & n.15). The Santa Clara County Order even encouraged essential businesses to stay open. *See* Santa Clara County Order, 2 (¶ 3). Plaintiff therefore was never "prohibited" by the Closure Orders from accessing its property.

Plaintiff's argument that access to its restaurant was prohibited because its customers were unable to enter its business is contrary to case law in this Circuit. In *Pappy's I*, the court evaluated a nearly identical civil authority provision's application to California closure orders, and found that access was not "prohibited" where plaintiff was still able to enter the premises, even though the order prevented customers from entering. *See Pappy's I*, 2020 WL 5500221, at *6. Here, although Plaintiff chose to completely suspend its operations, it was likewise Plaintiff's customers, and not Plaintiff itself, who were prohibited from entering the premises by the Closure Orders. *See* FAC ¶ 10.

Plaintiff has additionally failed to sufficiently allege that the Closure Orders were issued as a "direct result of a risk of physical loss to the property," as required under the plain language of the Policy. *See generally,* FAC. Plaintiff claims that the "Closure Orders directly resulted from the risk of direct physical loss caused by COVID-19," but fails to cite to any language in the Closure Orders that indicate this to be the case. *See* FAC ¶¶ 45, 62. Rather, Plaintiff only notes that the Santa Clara County Order was created in an "effort to mitigate and slow the spread of COVID-19 in the community." *See id.* To the extent that the Closure Orders even mention physical property, they only recognize that surfaces may become contaminated and need to be cleaned, which this Court has established does not constitute physical damage. *See id.* ¶ 45; *see also Kevin Barry Fine Art Assocs.*, 2021 WL 141180, at *6 (finding that plaintiff could not allege that California "government Stay-at-Home Orders were issued as a direct result of such loss to *property*. Instead, the Stay-at-Home Orders were issued to prevent the spread of COVID-19 to *people*.") (emphasis

12

in original).

**C. Sue and Labor Provision**

In its Seventh and Eighth Claims, Plaintiff alleges that it is entitled under the "Sue and Labor" provision to expenditures made to protect and repair its property in response to Closure Orders and COVID-19. *See* FAC ¶ 65. Defendant responds that Plaintiff is not entitled to such expenses as there was no "loss of or damage to" its property. *See* Mot. 25. The Court agrees with Defendant. The relevant provisions are:

> 3. Duties In The Event Of Loss Or Damage
>
> You must see that the following are done in the event of loss of or damage to Covered Property:
>
> d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside in the best possible order for examination. Also, keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim.
>
> . . .
>
> 5. Loss Payment
>
> In the event of physical loss or physical damage covered by this policy:
>
> a. At our option we will either:
> (1) Pay the value of physically lost or physically damaged property, as described in paragraph d. below;
> (2) Pay the cost of repairing or replacing the physically lost or physically damaged property, plus any reduction in value of repaired items;
>     (3) Take all or any part of the property at an agreed or appraised value; or
> (4) Repair, rebuild or replace the property with other property of like kind and quality.

ECF 1-1 at 50. The "Sue and Labor" provision to which Plaintiff refers is located in the section "Duties in the Event of Loss or Damage," which imparts on Plaintiff in relevant part the duties to: (1) "[t]ake all reasonable steps to protect the Covered Property from further damage by a Covered

Cause of Loss,"; and (2) "keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim." *Id*. In the event of physical loss of or physical damage to the covered property, Defendant may be obligated to reimburse Plaintiff for its expenditures. *See id*.

The Court finds as a matter of law that the plain language of the Sue and Labor provision unambiguously requires that Plaintiff suffer direct physical loss of or damage to its property. *See Waller*, 11 Cal. 4th at 18. Because, as discussed above, the Court finds that Plaintiff has not alleged direct physical loss of or damage to its property, the "Sue and Labor" provision is not applicable. *See Kevin Barry Fine Art Assocs.*, 2021 WL 141180, at \*7 (finding Sentinel's "Sue and Labor" provision inapplicable where plaintiff "has not, and cannot, allege direct physical loss of its property or direct physical loss to property in the immediate area.").

**D. Virus Endorsement Provision**

Plaintiff, in its Ninth and Tenth Claims, alleges that it has suffered a loss under the "Virus Endorsement" coverage due to the COVID-19 virus. *See* FAC ¶¶ 136-155. Defendant argues, and the Court agrees, that Plaintiff has not alleged any facts to trigger coverage under this provision. *See* Mot. 20. The Policy provides:

> i. "Fungi", Wet Rot, Dry Rot, Bacteria And Virus
> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
> (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.
> (2) But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss."
>
> This exclusion does not apply:
> (1) When "fungi", wet or dry rot, bacteria or virus results from fire or lightning; or
> (2) To the extent that coverage is provided in the Additional Coverage – Limited Coverage for "Fungi", Wet Rot, Dry Rot,

14

> Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning.
>
> . . .
>
> 1. Limited Coverage For "Fungi", Wet Rot, Dry Rot, Bacteria and Virus
>
> a. The coverage described in 1.b. below only applies when the "fungi", wet or dry rot, bacteria or virus is the result of one or more of the following causes that occurs during the policy period and only if al reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.
>
> (1) A "specified cause of loss" other than fire or lightning.
>
> . . .
>
> 19. "Specified Cause of Loss" means the following: Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

ECF 1-1 at 55, 128, 129. The Policy includes a "Virus Exclusion," which precludes the insured from recovering for loss or damage that is caused directly or indirectly by the presence, growth, proliferation, or spread of a virus. *See id.* at 128. The "Virus Endorsement" provision on which Plaintiff relies in its Ninth and Tenth Claims provides limited coverage, despite the presence of a virus, when the "virus is the result of one or more of the following causes: (1) A 'specified cause of loss' other than fire or lightning; [or] (2) Equipment Breakdown Accident . . ." *Id.* at 129. "Specified Causes of Loss" are defined elsewhere and include, inter alia, "smoke" and "water damage." *See id.* at 55.

Although this Court does not rely on the Policy's Virus Exclusion to find that Plaintiff's recovery under Claims One through Eight is barred, the Virus Exclusion does unambiguously apply in this case and provides an additional bar to recovery for the aforementioned Claims. Plaintiff argues that the Exclusion is ambiguous as to whether the excluded loss is limited to physical damages, and that there is a factual dispute regarding whether COVID-19, as opposed to

15

the government shutdowns, was the cause of Plaintiff's loss. *See* Opp'n. 15,17. This Court agrees with another court in this district that found that the language of an identical Virus Exclusion provision unambiguously barred recovery for both physical and economic losses when "the loss was caused directly or indirectly by the virus." *Franklin EWC, Inc.*, 2020 WL 5642483, at *2. The Court finds that the Virus Exclusion is unambiguous as a matter of law and clearly applies to Plaintiff's claims here, which all allege that losses were caused, directly or indirectly, by COVID-19. *See* FAC ¶¶ 62-5.

Plaintiff has not adequately alleged that it nevertheless qualifies for coverage under the plain terms of the Virus Endorsement. Plaintiff has not alleged any facts in its First Amended Complaint that indicate that COVID-19 qualifies as a "specified cause of loss." *See generally,* FAC. Plaintiff further has failed to provide any additional facts or argument to support coverage under this provision in its Opposition to Defendant's Motion. *See generally,* Opp'n. Accordingly, Plaintiff's claims under "Virus Endorsement" coverage fail. *See Franklin EWC*, 2020 WL 5642483, at *3-4 (holding that plaintiffs failed to state a claim for Limited Virus coverage because they did not allege that the "virus was caused by any of the specified causes of loss.").

**E. Implied Covenant of Good Faith and Fair Dealing**

In its final Eleventh and Twelfth Claims, Plaintiff alleges that Defendant breached its implied covenant of good faith and fair dealing due to Defendant's unreasonable denial of coverage without investigation. *See* FAC ¶ 154. Defendant responds that because Plaintiff's claims were not covered, Defendant did not owe Plaintiff any benefits, and accordingly no benefits were wrongly withheld. *See* Mot. 18. The Court agrees with Defendant.

Under California law, there are two elements for a breach of the implied covenant of good faith and fair dealing in the insurance context: "(1) benefits due under the policy must have been withheld and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love*, 221 Cal. App. 3d at 1151, 271 Cal.Rptr. 246. As Plaintiff has failed to allege

16

that benefits were due to it, Plaintiff is unable to meet both elements for a bad faith claim. *See id*. at 1151-52, 271 Cal.Rptr. 246.

### IV. CONCLUSION

Under the unambiguous terms of the Insurance Policy, the Court finds that Plaintiff has failed to plead facts sufficiently demonstrating that any of Plaintiff's alleged losses are covered under the Policy. Accordingly, the Court also dismisses Plaintiff's putative class actions claims. *See Boyle v. Madigan*, 492 F.2d 1180, 1182 (9th Cir. 1974) ("[W]here the named plaintiffs have failed to state a claim in themselves for the relief they seek[,] ... there is no occasion for the court to wrestle with the problems presented in considering whether the action may be maintained on behalf of the class."). The Court need not consider whether Plaintiff has standing to bring claims on behalf of the Class.

While it does not seem likely that Plaintiff will be able to cure the deficiencies in the First Amended Complaint, the Court recognizes that litigation regarding business interruption coverage in the COVID-19 context is only beginning, and will allow Plaintiff the opportunity to amend in accordance with Rule 11 obligations should it find new support for its claims in the developing law. The amended complaint shall be filed within 21 days of the date of this Order. Thus, Defendant's Motion to Dismiss is GRANTED WITH LEAVE TO AMEND as to Claims One through Twelve.

**IT IS SO ORDERED.**

Dated: February 8, 2021

_____
BETH LABSON FREEMAN
United States District Judge

17