**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PROTEGE RESTAURANT PARTNERS LLC,<br><br>Plaintiff,<br><br>v.<br><br>SENTINEL INSURANCE COMPANY, LIMITED,<br><br>Defendant. | Case No. 20-cv-03674-BLF<br><br>**ORDER GRANTING 12(B)(6) MOTION TO DISMISS WITH PREJUDICE AND DENYING 12(B)(1) MOTION TO DISMISS WITHOUT PREJUDICE**<br><br>[Re: ECF No. 71] |

Before the Court is Defendant Sentinel Insurance Company, Limited's 12(b)(6) and 12(b)(1) motions to dismiss Plaintiff Protégé Restaurant Partners LLC's Second Amended Complaint. Plaintiff brings this action for Defendant's alleged failure to provide business insurance coverage for Plaintiff's losses related to the COVID-19 pandemic ("COVID") and COVID-related county and state stay-at-home orders ("Closure Orders"). The Court GRANTS Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim, and DENIES WITHOUT PREJUDICE Defendant's Rule 12(b)(1) motion for lack of personal jurisdiction and standing as to Plaintiff's nationwide class claims.

**I.    BACKGROUND**

The factual background and procedural history of this case are set forth in the Court's February 8, 2021 Order granting Defendant's first motion to dismiss with leave to amend. ECF No. 67 ("Order") at 2-3. At issue are provisions from an all-risk business insurance policy Plaintiff purchased from Defendant that was in effect from January 20, 2020 to January 20, 2021, and a materially identical policy in effect from January 20, 2021 to January 20, 2022 (collectively, the "Policy"). Following this Court's order on Defendant's first motion to dismiss, Plaintiff filed a

1  second amended complaint on March 1, 2021.  *See* ECF No. 70 ("SAC").  Defendant filed a

2  Motion to Dismiss Plaintiff's second amended complaint on March 15, 2021.  *See* ECF No. 71

3  ("Mot.").  Plaintiff filed its Opposition on March 29, 2021.  *See* ECF No. 74 ("Opp.").  Defendant

4  filed its Reply on April 15, 2021.  *See* ECF No. 79 ("Rep.").  The parties filed requests for judicial

5  notice accompanying the Motion briefing.  *See* ECF Nos. 72, 75, 80.  Defendant has since filed

6  two statements of recent decisions in support of its Motion.  *See* ECF Nos. 82, 84.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6):  Failure to State a Claim

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  While a complaint typically need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

### B.    Federal Rule of Civil Procedure 15(a):  Leave to Amend

Under Federal Rule of Civil Procedure 15(a), the Court should freely grant leave to amend "when justice so requires," keeping in mind Rule 15's underlying purpose "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127

2

1   (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).  When dismissing a

2   complaint for failure to state a claim, "a district court should grant leave to amend even if no

3   request to amend the pleading was made, unless it determines that the pleading could not possibly

4   be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted).  A court

5   has discretion, however, to deny leave to amend where amendment is futile.  *Leadsinger, Inc. v.*

6   *BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182

7   (1962)).

## III. DISCUSSION

### A. Requests for Judicial Notice

The parties filed requests for judicial notice regarding orders in various cases. ECF Nos. 72, 75, 80.  The requests are unopposed.  Documents in the public record and documents filed in other courts are proper subjects of judicial notice.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Accordingly, the parties' requests for judicial notice are GRANTED.

### B. Virus Exclusion

Defendant alleges that the Policy's Virus Exclusion bars coverage for Plaintiff's COVID-related losses.  The Virus Exclusion provision of the Policy states:

> We will not pay for loss or damage caused directly or indirectly by any of the following…:
> (1) Presence, growth, proliferation, spread or any activity of … virus.

SAC, Ex. A at 128 (emphasis added).  The Virus Exclusion applies to the "Special Property Coverage Form," *id.*, which includes each coverage provision Plaintiff asserts here.  SAC ¶ 86.

As this Court has already held, the Virus Exclusion unambiguously forecloses coverage of Plaintiff's alleged losses due to either COVID contamination or the Closure Orders.  Order at 15-16.  In both cases, the losses were "caused directly or indirectly by…virus."  *Id.* at 16.  Many courts have come to the same conclusion about identical or similar exclusion provisions at the pleading stage.  *Ets-Hokin v. Sentinel Ins. Co., Ltd.*, No. 4:20-cv-06518, ECF No. 46, at 2-3 (N.D. Cal. Aug. 27, 2021); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-cv-04434 JSC,

1   506 F.Supp.3d 854, 857-59 (N.D. Cal. Dec. 14, 2020); *Garces v. Sentinel Ins. Co., Ltd.*, No.

2   5:21-cv-00189-JWH-SPx, 2021 WL 2010357, at *3 (C.D. Cal. May 18, 2021); *LA County*

3   *Museum of Nat. History Found. v. Travelers Indem. Co.*, No. 2:21-cv-01497-SVW-JPR,

4   2021 WL 1851028, at **5-6 (C.D. Cal. Apr. 15, 2021); *Mayssami Diamond, Inc. v. Travelers*

5   *Cas. Ins. Co. of Am.*, No. 3:20-cv-1230-AJB-RBB, 2021 WL 1226447, at *4 (S.D. Cal. Mar. 30,

6   2021).

7         Plaintiff argues that the definition of "loss or damage" in the Virus Exclusion is "[d]irect physical loss or direct physical damage," so the Virus Exclusion does not apply to non-physical loss like business losses. Opp. at 4-6. Plaintiff asserts this is a novel argument never previously raised by a policyholder. Opp. at 6. Even if this Court were the first to consider Plaintiff's proposed narrow definition of "loss or damage" in the Virus Exclusion, this is not an issue of first impression for *this Court*. Plaintiff raised the same argument in opposition to Defendant's motion to dismiss its First Amended Complaint. ECF No. 47 at 5-6. This Court nonetheless held that "the Virus Exclusion does unambiguously apply in this case and provides an additional bar to recovery[.]" Order at 15-16. Fatally, none of Plaintiff's arguments regarding the Virus Exclusion in relation to the present motion pertain to any new facts not previously alleged in its First Amended Complaint. Opp. at 3-7.

      Further, even if other plaintiffs have not pled that "loss or damage" in the Virus Exclusion refers to "[d]irect physical loss or direct physical damage," courts have found that identical policy language excludes coverage for a wider range of COVID-related losses, including business losses. *See, e.g.*, *Ets-Hokin*, No. 4:20-cv-06518, ECF No. 46, at 2; *LA County Museum*, 2021 WL 1851028, at **5-6; *Garces*, 2021 WL 2010357, at *3; *see also Boxed Foods Company, LLC v. California Capital Insurance Company*, No. 20-cv-04571-CRB, 497 F.Supp.3d 516, 521-22 (N.D. Cal. Oct. 26, 2020) ("Plaintiffs attempt to distinguish the Virus Exclusion as only applying to property damage, whereas the Civil Authority provision applies to business income and extra expenses. … But nothing in the Virus Exclusion suggests that it is limited to property damage.")

      The Court is not persuaded by Plaintiff's other arguments. Plaintiff argues that ambiguities in insurance contracts should be interpreted narrowly against the insurer. Opp. at 5.

4

But the Court has already found that the Virus Exclusion "unambiguously appl[ies]." Order at 15. Plaintiff argues there is a factual dispute whether the virus itself or the Closure Orders constituted efficient proximate cause for its alleged losses. Opp. at 6-7. The Virus Exclusion applies to loss or damage "caused directly or indirectly by … virus," so the Exclusion applies regardless of whether the virus or the Closure Orders resulted in the loss. SAC, Ex. A at 128. Finally, Plaintiff cites authority to argue that Defendant's failure to perform an adequate investigation of Plaintiff's claims precludes dismissal under the Virus Exclusion. Opp. at 6. But Plaintiff's claims predicated on Defendant's alleged failure to investigate do not stand alone. Having concluded that the Policy does not cover Plaintiff's alleged losses, the Court finds that Plaintiff's good faith and fair dealing claims also fail. *See infra* Section III.E.

Accordingly, as it held regarding Defendant's first motion to dismiss, the Court finds that the Virus Exclusion unambiguously bars coverage for Plaintiff's alleged losses related to COVID.

### C.     Limited Virus Coverage

Plaintiff argues that even if the Virus Exclusion applies to COVID-related losses, Plaintiff is entitled to recover under the Time Element Coverage provision of the Limited Virus Coverage, which carves out coverage for some losses otherwise excluded by the Virus Exclusion. Opp. at 20-23. The Time Element Coverage provision states:

> The following applies only if a Time Element Coverage applies to the "scheduled premises" and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Time Element Coverage.
>
> (1) If the loss which resulted in "fungi", wet or dry rot, bacteria or virus does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet or dry rot, bacteria or virus, then our payment under the Time Element Coverage is limited to the amount of loss and expense sustained in a period of not more than 30 days unless another number of days is indicated in the Declarations. … If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet or dry rot, bacteria or virus, but remediation of "fungi", wet or dry rot, bacteria or virus prolongs the "period of restoration", we will pay for loss and expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such

5

>coverage is limited to 30 days unless another number of days is indicated in the Declarations.

SAC, Ex. A at 129-30. Defendant argues that the Time Element Coverage provision requires a "specified cause of loss" or "Equipment Breakdown Accident" that Plaintiff has failed to plead. Mot. at 9. To the extent these elements are not required, Defendant argues that Plaintiff has failed to plead either a "loss which resulted … in virus" or a "suspension of 'operations' [that] satisfies all the terms and conditions of the applicable Time Element Coverage." Rep. at 7.

The Court found previously that Plaintiff had not sufficiently alleged that it was entitled to Limited Virus Coverage because it failed to plead facts indicating that any of its COVID-related losses resulted from a "specified cause of loss." Order at 16. The parties dispute whether the Time Element Coverage provision has the same "specified cause of loss" requirement. Mot. at 9; Opp. at 20-21. Regardless of the disputed "specified cause of loss" requirement, the Court agrees with Defendant that Plaintiff has not adequately pled facts related to other requirements of the Time Element Coverage provision.

First, Plaintiff has not pled facts indicating a "loss which resulted in … virus." SAC, Ex. A at 129-30. Instead, Plaintiff's allegations pertain to losses it alleges resulted *from* COVID. *See generally* SAC; *Hair Perfect Int'l, Inc. v. Sentinel Ins. Co., Ltd.*, No. LA CV20-03729 JAK (KSx), 2021 WL 2143459, at *9 (C.D. Cal. May 20, 2021); *J&H Lanmark, Inc. v. Twin City Fire Ins. Co.*, No. 5:20-333-DCR, 2021 WL 922057, at **4-5 (E.D. Ky. Mar. 10, 2021).

Second, Plaintiff has not alleged sufficient facts to plead a "suspension of 'operations' [that] satisfies all the terms and conditions of the applicable Time Element Coverage." SAC, Ex. A at 129-30. The parties do not dispute that this language requires satisfaction of a separate coverage provision of the Policy—like the Civil Authority, Business Income, or Extra Expense provisions under which Plaintiff alleges coverage. Opp. at 22; Rep. at 7. As the Court outlines below, Plaintiff has not alleged sufficient facts to meet any of these provisions. *See infra* Section III.D; *Hair Perfect*, 2021 WL 2143459, at **8-9.

Third, Plaintiff has not alleged sufficient facts regarding "a covered suspension of 'operations' [that] was caused by loss or damage other than…virus." SAC, Ex. A at 129-30.

6

Plaintiff argues that the Closure Orders caused a "covered suspension of 'operations,'" but Plaintiff also claims that these Closure Orders were caused by COVID—not by "loss or damage other than…virus." Opp. at 22-23; *see, e.g.*, SAC ¶¶ 12, 53-54.

Accordingly, Plaintiff has not pled facts demonstrating coverage under the Time Element Coverage provision. Since the Virus Exclusion plainly forecloses coverage for Plaintiff's alleged COVID-related business losses, and Plaintiff's pleadings do not allege facts sufficient to show that the Limited Virus Coverage or the Time Element Coverage applies, the Court finds that Plaintiff has not alleged sufficient facts to support that it is entitled to coverage for its COVID-related losses under the Policy.

### D.  Coverage Provisions

Even if the Virus Exclusion did not apply, the Court finds that Plaintiff has not plausibly alleged that it is entitled to coverage for its COVID-related business losses under any of the provisions Plaintiff identifies. Plaintiff claims it is entitled to coverage for its COVID-related losses under four separate Policy provisions: (1) Business Income, (2) Extra Expense, (3) Sue and Labor, and (4) Civil Authority (collectively, "Coverage Provisions"). Plaintiff alleges that these provisions cover its losses resulting from (1) physical contamination of restaurant property with COVID and (2) the Closure Orders. *See, e.g.*, SAC ¶¶ 78, 80-81. Defendant argues that none of these provisions apply. Mot. at 11-23.

While the parties provided briefing regarding various elements of the Coverage Provisions, the Court finds that their applicability depends on a single common requirement. Each of the Coverage Provisions requires "direct physical loss of or physical damage to property." The Business Income and Extra Expense provisions recite this element. SAC ¶¶ 79, 83. Plaintiff does not contest that "direct physical loss of or physical damage to property" is a "prerequisite" to Sue and Labor coverage. Opp. at 19-20. Further, the Civil Authority provision requires loss from a civil authority prohibiting access to Plaintiff's property "as the direct result of a Covered Cause of Loss to property in the immediate area." SAC ¶ 77. "Covered Cause of Loss" is defined as "risks of direct physical loss." SAC ¶ 78.

The Court has already found that none of Plaintiff's alleged COVID-related losses are

7

sufficient to meet the "direct physical loss of or physical damage to property" element of the Coverage Provisions, because this element unambiguously requires "a physical change in the condition or a permanent dispossession of the property." Order at 7-8. None of the new facts Plaintiff alleges in its Second Amended Complaint change the Court's mind. For example, Plaintiff now points to language in the Closure Orders about the potential for COVID to cause "harm to property" and "property loss or damage." SAC ¶¶ 53, 59. But the language Plaintiff identifies pertains to viral contamination of property. *See, e.g.*, SAC ¶ 53 ("[The Santa Clara County Order] expressly recognized that physical surfaces of property located in business may be contaminated and a source of transmission[.]"), ¶ 57 ("[T]he virus physically is causing property loss or damage due to its proclivity to attach to surfaces for prolonged periods of time.") The Court has already recognized viral contamination does not constitute "direct physical loss of or physical damage to property." Order at 12.

Plaintiff's other newly alleged facts are equally unconvincing. First, Plaintiff now alleges that "Plaintiff's covered property has been and continues to be contaminated by COVID-19," SAC ¶¶ 48, 14, when previously it had only alleged this was a likely possibility. *See, e.g.*, ECF No. 26, ¶ 12. However, the Court previously held that "[e]ven if Plaintiff had known of a specific instance of COVID-19 particles inside of its business," this would not constitute "physical loss of or physical damage to property." Order at 8.

Second, Plaintiff alleges more facts about COVID contamination of air and surfaces, *see, e.g.*, SAC ¶¶ 14, 35, 39, 45, 48, 72, 84. But the Court finds these facts to be more of the same—the Court has already found that COVID contamination is not a "physical change." *Id.* at 8.

Third, Plaintiff alleges more facts about the impact of Closure Orders, including that (1) some limitations on restaurants have continued to the present and (2) the lack of takeout at Plaintiff's restaurant in March 2020 meant that the Closure Orders forced it to shut down completely. *See, e.g.*, SAC ¶¶ 15, 53, 56, 58-64. Again, the Court does not see how Plaintiff's newly alleged facts change the Court's prior conclusion: "Plaintiff was never disposed of its property, as it was the customers, and not Plaintiff, who were prohibited from access. … Additionally, Plaintiff never claimed that the Closure Orders were permanent." Order at 8. The

8

fact that Plaintiff chose to put its food on china rather than plastic does not entitle it to a finding of "direct physical loss of or physical damage to property." And just because certain government-imposed limitations on Plaintiff's use of its restaurant property "continue[] to this day," SAC ¶ 62, this is not "permanent dispossession" of Plaintiff's property.

None of Plaintiff's other arguments are convincing. Plaintiff argues that as construed, the language "direct physical loss of or physical damage to property" is ambiguous, because it requires "a physical change in the condition **or** a permanent dispossession of the property." Opp. at 15. The Court considers this a frivolous argument. Pointing to the word "or" is not enough to show ambiguity, particularly where the original contract language—"direct physical loss of **or** physical damage to property"—already contains it. Plaintiff also raises extrinsic evidence and case law quibbles to argue that "physical loss of or physical damage to property" does not require a physical change or permanent dispossession. Opp. at 9-14. But the Court has already found that "direct physical loss of or physical damage to property" unambiguously requires "a physical change in the condition or a permanent dispossession of the property." Order at 7-8. The only newly alleged facts Plaintiff offers is extrinsic evidence on the "insurance industry understanding" of "direct physical loss of or physical damage to property," which Plaintiff argues includes temporary—not just permanent—dispossession. SAC ¶ 84. However, extrinsic evidence "may not be used to show that words in contracts mean the exact opposite of their ordinary meaning." *Boxed Foods*, 497 F.Supp.3d at 525 (quoting *ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1790-91 (1993).)

Plaintiff also provides a handful of out-of-district and state court decisions to argue that its position is supported by the case law. *See* Opp. at 7-9. The Court remains unconvinced, particularly considering the avalanche of cases in this district and the Ninth Circuit that have found COVID-related losses not covered by policies requiring "direct physical loss of or physical damage to property." *See, e.g.*, *Ets-Hokin*, at 4-6; *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, No. 20-cv-04783-SK, 513 F.Supp.3d 1163, 1167-71 (N.D. Cal. Jan. 13, 2021); *Palmdale Estates, Inc. v. Blackboard Ins. Co.*, No. 20-cv-06158-LB, 510 F.Supp.3d 874 (N.D. Cal. Jan. 4, 2021). Further, Plaintiff's cases are distinguishable. For example, Plaintiff argues *Kingray*

9

*Inc. v. Farmers Grp. Inc.* supports that temporary dispossession is a form of "physical loss of" property. No. CV 20-963 JGB (SPx), 2021 WL 837622 (C.D. Cal. Mar. 4, 2021); Opp. at 10-11. But the plaintiff in *Kingray* owned a hair salon that was closed by a stay-at-home order categorically closing all hair salons in the area. *Kingray*, at *7; *id.*, ECF No. 50 ¶ 41. Plaintiff has not pled it suffered the same level of purported "dispossession" as the plaintiff in *Kingray*—the closure of Plaintiff's restaurant hinged on its decision not to provide takeout, rather than a categorical closure of restaurants. SAC ¶ 60. Further, Plaintiff cites *Hughes v. Potomac Ins. Co. of District of Columbia*. 199 Cal. App. 2d 239 (1962). But *Hughes* involved a property that had become "completely useless to its owners." *Hughes*, 199 Cal. App. at 248. That Plaintiff was able to reopen its restaurant once it offered takeout belies the fact that its restaurant property had become "completely useless." SAC ¶¶ 61-62.

Accordingly, the Court continues to side with the prevailing opinion in the Ninth Circuit and beyond—Plaintiff has not pled facts sufficient to show its COVID-related losses resulted from "direct physical loss of or physical damage to property," so it is not plausible that Plaintiff is entitled to coverage under any of the Coverage Provisions.

### E. Good Faith and Fair Dealing

In its final Eleventh and Twelfth Claims, Plaintiff alleges that Defendant breached its implied covenant of good faith and fair dealing due to Defendant's unreasonable denial of coverage without investigation. *See* SAC ¶¶ 168-82. Under California law, there are two elements for a breach of the implied covenant of good faith and fair dealing in the insurance context: "(1) benefits due under the policy must have been withheld and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1151 (Cal. Ct. App. 1990). As Plaintiff has failed to adequately allege that benefits were due to it, Plaintiff has not provided a plausible basis for its good faith and fair dealing claims.

### F. Standing to Sue

Defendant argues under Rule 12(b)(1) that Plaintiff has no standing to sue on behalf of out-of-state parties in the putative class under the law of states other than California. Mot. at 23-25.

Although Defendant properly notes that Plaintiff operates only in California and it purchased the Policy in California, under California law, the Court defers consideration of the scope of any class until the class certification stage. Accordingly, the Court DENIES WITHOUT PREJUDICE Defendant's Rule 12(b)(1) motion to dismiss for lack of standing. Defendant further raises an issue of lack of personal jurisdiction under *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017). Considering that Defendant raised this issue only in a footnote, the Court declines to consider it and DENIES Defendant's motion to dismiss for lack of personal jurisdiction WITHOUT PREJUDICE.

### G. Leave to Amend

Dismissal without leave to amend is proper where amendment would be futile. *Thinket Ink Info. Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). This is Plaintiff's third iteration of its complaint, which was filed after the Court dismissed Plaintiff's First Amended Complaint with leave to amend. ECF No. 67. The Court has now found twice that based on Plaintiff's pleadings (1) the Virus Exclusion bars coverage for Plaintiff's alleged losses and (2) none of the Policy provisions under which Plaintiff seeks relief plausibly entitle it to coverage. *See* Order at 10, 12, 14-16. In its order on Defendant's previous motion to dismiss, the Court stated the following: "[I]t does not seem likely that Plaintiff will be able to cure the deficiencies in the First Amended Complaint." Order at 17. Plaintiff's Second Amended Complaint did little to allay the Court's fears: Plaintiff's new factual allegations differed only in degree—not in kind—from its prior pleadings. It now appears clear that further amendment would be futile given the express and unambiguous terms of the Policy. The Court DENIES Plaintiff leave to amend and DISMISSES Plaintiff's claims WITH PREJUDICE.

## IV. CONCLUSION

Under the unambiguous terms of the Policy, the Court finds that Plaintiff has failed to plead facts sufficiently demonstrating that any of Plaintiff's alleged losses are (1) not barred by the Virus Exclusion provision of the Policy or (2) covered by any of the alleged Coverage Provisions—Business Income, Extra Expense, Civil Authority, or Sue and Labor. Accordingly, the Court dismisses Plaintiff's claims, along with Plaintiff's putative class actions claims. *See*

*Boyle v. Madigan*, 492 F.2d 1180, 1182 (9th Cir. 1974) ("[W]here the named plaintiffs have failed to state a claim in themselves for the relief they seek[,] ... there is no occasion for the court to wrestle with the problems presented in considering whether the action may be maintained on behalf of the class.").

    For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The Court DENIES WITHOUT PREJUDICE Defendant's Rule 12(b)(1) motion to dismiss for lack of standing or personal jurisdiction.

(2) The Court GRANTS Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim.

(3) Plaintiff's claims are DISMISSED WITH PREJUDICE.  A separate judgment will issue, and the Clerk shall close the file.

Dated:  September 28, 2021

*(signature)*

BETH LABSON FREEMAN
United States District Judge